# United States District Court
## Middle District of Florida
### Ft. Myers Division

**ALEJANDRO LORENZO-ZAMORANO,
CARLOS GUMARO BONILLA-
HERNANDEZ, FERNANDO CRUZ-
MAQUEDA, MANUEL CRUS-SANTIAGO,
EUGES HERNANDEZ-GONZALEZ,
RIGOBERTO JUAREZ-MELAGAREJO,
JOSE LUIS LOPEZ-HERNANDEZ,
MARTIN, LOPEZ-HERNANDEZ, ISRAEL
LOPEZ-ZAMORA, JOSE LORENZO-
ZAMORANO, FELICIANO ORTIZ-
MAQUEDA, GABRIEL REYES-
MARTINEZ, MARCELINO ZAMORANO-
MARTIN, MIGUEL ZAVALETA-TEJEDA,**
individually and on behalf of all other
persons similarly situated,

                    **Plaintiffs,**

**-vs-**                                              Case No.  **2:10-cv-657-FtM-29DNF**

**OVERLOOK HARVESTING COMPANY,
LLC, BENTLEY BROTHERS, INC.,**

                    **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

     This cause came on for consideration on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION FOR DECLARATION OF A CLASS ACTION (Doc. No. 24)** |
| **FILED:** | **February 28, 2011** |
| | |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**. | |

This action was filed by migrant farmworkers against their employers Overlook Harvesting Company, LLC ("Overlook") and Bentley Brothers, Inc. ("Bentley").  The Plaintiffs assert claims for violations of the Fair Labor Standards Act (Count I); Breach of Employment Contract (Count II); and violations of the Minimum Wage Provisions of the Florida Constitution (Count III).  The Plaintiffs seek class certification for the breach of employment contract and violations of the minimum wage provisions of the Florida Constitution claims only. The Motion for Declaration of a Class Action (Doc. 24) was referred to this Court by Order (Doc. 28) entered on March 17, 2011, for a report and recommendation.  On March 15, 2011, the Defendants filed a Response in Opposition to Plaintiffs' Motion for Class Certification (Doc. 25).  The Court has carefully reviewed the submissions of the parties.

### I.  Facts

The facts, as set forth in the Complaint for Damages, Declaratory Relief, Costs of Litigation, and Attorney's Fee (Doc. 1) are as follows.[1] The Plaintiffs are fourteen (14) migrant farmworkers who were employed by the Defendants, and picked citrus fruit during the 2007-2008 and/or 2008-2009 Florida citrus harvests. (Com. ¶1).     The Plaintiffs claim that the Defendants failed to pay them

---

[1] The facts are taken from the Complaint (Doc. 1), however the Court makes no ruling on the merits of these facts.  Further "Com" refers to the Complaint (Doc. 1).

minimum wages as is required by the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. and is required pursuant to the Florida Constitution, Art. 10 §24; and the Defendants breached numerous provisions of the employment contracts with the Plaintiffs.  The Plaintiffs are all citizens of Mexico who maintain permanent homes there and were admitted to the United States on a temporary basis pursuant to 8 U.S.C. §1101(a)(15)(H)(ii)(a) to harvest fruit for either or both of the 2007-2008 and 2008-2009 Florida citrus harvest.  (Com. ¶¶8-21).

The Defendant, Overlook is a limited liability corporation based in Winter Haven, Florida.  (Com. ¶23).  The Defendant, Bentley is a closely-held Florida corporation based in Winter Haven, Florida and is a citrus handler that purchases, harvests, hauls and sells citrus fruit in central Florida.  (Com. ¶24).  Overlook is a subsidiary of Bentley, and Overlook harvests fruit for Bentley at citrus groves in and near Polk, Hardee, and DeSoto Counties, Florida.  (Com. ¶¶ 1, 23).  The Defendants were the employer or joint employer of the Plaintiffs. (Com. ¶24).

The Defendants were approved to hire temporary foreign workers, commonly known as "H-2A" workers, to help meet their labor needs for the 2007-2008 and the 2008-2009 citrus harvests.  (Com. ¶29).  The Department of Labor approved the Defendants' applications for 352 individuals for the 2007-2008 season, and 374 individuals for the 2008-2009 season.  (Com. ¶29).  The Department of Labor accepted the Defendants' temporary labor certification application and each of these applications included a clearance order containing representations regarding wages, records, and working conditions.  (Com. ¶26, 30).

The Plaintiffs were recruited in Mexico by the Defendants.  (Com. ¶32).  After being hired, the Plaintiffs obtained their H-2A visas through the United States Consulate and traveled to the Defendant's central Florida operations.  (Com. ¶33).  The Plaintiffs had expenses for traveling to and

becoming eligible for employment with the Defendants.  (Com. ¶37).  These expenses were primarily for the benefit of the Defendants, however, the Defendants did not reimburse the Plaintiffs for these pre-employment costs.  (Com. ¶37).  The Plaintiffs incurred expenses by buying their own picking sacks and were not reimbursed by the Defendants.  (Com.¶ 38).  The Defendants failed to pay the appropriate wage rates, and failed to pay for time viewing instructional videotaped presentations as well as under-reported the hours worked by the Plaintiffs.  (Com. ¶40).  The Defendants also failed to keep accurate records with respect to the work of the Plaintiffs.  (Com. ¶40).

The Plaintiffs seek to represent a class consisting of all H-2A workers who were employed by the Defendants during the 2007-2008 and 2008-2009 harvest seasons pursuant to temporary labor certifications issued to Overlook.   (Com. ¶44).   The class members are so numerous and geographically disperse as to make joinder impracticable.  (Com. ¶45).  The Plaintiffs believe that the number of individual class member would include over 500 individuals. (Com. ¶45).  The class would consist of migrant workers who are citizens of Mexico, and who reside in various states in Mexico. (Com. ¶45).  The putative class members are not fluent in English and are unfamiliar with the American judicial system.  (Com. ¶45).  The filing of separate actions by the Plaintiffs is not feasible because of the relatively small size of the individual claims and the indigence of the class members to maintain separate actions.  (Com. ¶45).

## II.  Ruling in *Rivera-Gonzalez* Litigation

The Defendants assert a class should not be certified in this case because Plaintiffs' counsel is attempting to circumvent a ruling in a previously filed case that is pending in the Tampa Division with virtually identical class claims brought by thirteen non-immigrant guestworkers against the same

Defendants.[2]  In *Adrian Rivera-Gonzalez, et al. v. Overlook Harvesting, L.L.C and Bentley Brothers, Inc.*, Case No. 8:09-cv-2385-T-TBM, the Honorable Thomas B. McCoun III, entered an Order denying the Plaintiffs' Motion for Enlargement of Time in Which to File Motion for Class Certification (Doc. 16 in Case No. 8:09-cv-2385-T-TBM) finding that the factors in the case weighed against a finding of excusable neglect for the Plaintiffs failing to file their motion for class certification timely.  (Doc. 16, p. 3, in Case No. 8:09-cv-2385-T-TBM).   The Defendants argue that since the Plaintiffs were unable to certify a class in the pending Tampa case, they brought a case in the Fort Myers Division to try again to get a class certified.   The Defendants contend that the Plaintiffs are attempting to circumvent the requirements of Local Rule 4.04(b) which required that a motion for class certification be brought within ninety (90) days from the date the initial complaint is filed.  Md. Fla. L.R. 4.01(b).

The Defendants contend that some of the Plaintiffs in the Tampa case worked for the same crew leaders who supervised the Plaintiffs in this case.  Further, the Plaintiffs rely on the deposition testimony from the Tampa case and according to Raymond Owen Bentley, Jr. who is the Managing Member of Overlook Harvesting Company, LLC, his company harvested fruit in Hillsborough, Polk, Manatee, Hardee, Desoto, and Highlands County, Florida, however the named Plaintiffs in this case

---

[2]  The Defendants raise the argument that they are litigating two identical cases, one in the Tampa Division and one in the Fort Myers Division which does not promote judicial economy. The Court notes that the Defendants did object to venue as to the Fort Myers Division in their Answer (Doc. 10, ¶7) .  Further, the Defendants filed a Motion to Transfer Action (Doc. 9) on December 7, 2010 requesting that this case be transferred to Judge McCoun in the Tampa Division.  The Honorable John E. Steele, United States District Judge entered an Order (Doc. 13) on December 22, 2011, which denied the Motion to Transfer Action because the Plaintiffs in the instant case would not consent to having Judge McCoun preside over this case.  No other motion is pending regarding venue, and it is not appropriate to raise the issue in a response to a Motion for Declaration of Class Action.  Therefore, the Court will not address the issue of venue.

never harvested fruit in Hardee or DeSoto counties. Yet, the Plaintiffs are forcing the Defendants to litigate in two separate divisions of the Middle District of Florida.

The Court does not find that the Defendants arguments that the Motion for Declaration of a Class Action should be denied on procedural grounds is persuasive. The Plaintiffs in the instant case have the right to bring a lawsuit on behalf of themselves and others. The Defendants failed to cite to any law which would prohibit plaintiffs who might have been putative class members in a case where a class was not certified from bringing their own lawsuit and attempting to have a class certified. Therefore, the Court will recommend that the Motion for Declaration of Class Action not be denied on procedural grounds.

### III. Analysis of Class Certification

The question of whether to certify a class is left to the sound discretion of the district court. *Sacred Heart Health Systems, Inc. v. Humana Military Healthcare*, 601 F.3d 1159, 1169 (11th Cir. 2010), *Babineau v. Federal Exp. Corp.,* 576 F.3d 1183, 1189 (11th Cir. 2009). The party moving for class certification has the burden of proof to establish the propriety of the class certification. *Sher v. Raytheon* Co., No. 09-15798, 2011 WL 814379, *2 (11th Cir. March 9, 2011)[3], *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008) (citing *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003)). In order to certify a class, all the requirements of FED. R. CIV. P. 23(a) must be met, as well as one requirement of FED. R. CIV. P. 23(b). *Luna v. Del Monte Fresh Produce (Southeast), Inc.*,354 Fed. App'x. 422, 424 (11th Cir. 2009), *Busby*, 513 F.3d at 1321,

---

[3] Eleventh Circuit unpublished opinions are not binding precedent but they may be cited as persuasive authority. 11th Cir. R. 36-2.

and *Hines v. Widnall*, 334 F.3d 1253, 1255 (11th Cir. 2003).  The four elements required for class

certification are: 1) numerosity, the class is so numerous that joinder of all members is impracticable;

2) commonality, there are questions of law or fact common to the class; 3)  typicality, the claims or

defenses of the class are typical;  and 4) adequacy, the class representative will fairly and adequately

protect the interests of the class.  *Busby,* 513 F.3d at 1321, *Hines*, 334 F.3d at 1255-56, *Franze v.*

*Equitable Assurance*, 296 F.3d 1250, 1253 (11th Cir. 2002), (citing FED. R. CIV. P. 23(a)).

Rule 23(b) provides as follows:

A class action may be maintained if Rule 23(a) is satisfied and if:

(1)     prosecuting separate actions by or against individual class members would create a risk of:
>    (A)     inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>    (B)     adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2)     the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3)     the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to the findings include:

>    (A)     the class members' interests in individually controlling the prosecution or defense of separate actions;
>    (B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;
>    (C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>    (D)     the likely difficulties in the managing  a class action.

Fed. R. Civ. P. 23(b), See Also, *Franze v. Equitable Assurance*, 296 F.3d at 1253.  The district court is required  to evaluate the requirements of a class certification even if not seriously contested by the defendants.  *Valley Drug Co. v. Geneva Pharmaceuticals*, 350 F.3d 1181, 1188 (11th Cir. 2003).  A trial court should not determine the merits of the claims at the class certification stage, however, the trial court can consider the merits of the case "'to the degree necessary to determine whether the requirements of Rule 23 will be satisfied.'"  *Heffner v. Blue Cross and Blue Shield of Ala.,* Inc., 443 F.3d 1330,  1337 (11th Cir. 2006) (quoting *Valley Drug*, 350 F.3d at 1188, n. 15)).

The H-2A Plaintiffs seek to certify a class defined as follows:

> All H-2A temporary foreign workers who were employed pursuant to a temporary labor certifications issued to Overlook Harvesting Company, LLC for work during the 2007-2008 and/or 2008-2009 Florida citrus harvests.

(Com. ¶44).  The Plaintiffs contend that the requirements of Fed. R. Civ. P. 23(a) and that of Fed. R. Civ. P. 23(b)(3) are satisfied.

## A.  Standing

Initially, the Court must determine that the named plaintiffs have standing pursuant to Article III to raise each class claim.  *Busby v. JRHBW Realty,* Inc., 513 F.3d 1314, 1321 (11th Cir. 2008) (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004)), and *Murray v. U.S. Bank Trust Nat. Ass'n.,* 365 F.3d 1284, 1289, n. 7 (11th Cir. 2004).   "Without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class."  *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003).  The Plaintiffs contend that they have satisfied this requirement. The Defendants did not raise any argument opposing the issue of standing. The Plaintiffs were employed as H-2A workers by the Defendants during the 2007-2008 and/or 2008-2009 citrus harvest seasons.  They were subject to the allegedly unlawful practices that

form the breach of contract claim and the violations of the minimum wage provisions of the Florida Constitution.  After a review of the allegations in the Complaint, the Court concludes that the named class representatives have standing to pursue the claims for breach of contract and violations of the minimum wage laws.

### B. Rule 23(a) Requirements

### 1. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).  Plaintiffs seeking class certification do not need to know the exact size of the proposed class.  *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004).  While the size of the proposed class is relevant to the court's determination, other factors such as "'the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits'" should also be considered.  *Id.*, *(*citing *In Re Terazosin Hydrochloride Antitrust Litigation*, 220 F.R.D. 672, 685 (S.D. Fla 2004) and *Walco Inv., Inc. v. Thenen*, 168 F.R.D. 315, 324 (S.D. Fla. 1996)).

The Plaintiffs assert that the proposed class consists of potentially over 200 H-2A workers from each season.   (Doc. 24, p. 10).  The Defendants do not challenge the numerosity requirement as they assert that the putative class would be approximately 550 fruit harvest workers, but do challenge the propriety of Rule 23(a)'s numerosity requirement as applied to the individual harvesting crews at Overlook that consisted of between 18 to 31 workers.  (Doc. 25, n. 5).

The named Plaintiffs contend that the relatively small size of the unpaid wages make individual suits economically infeasible.  The class members are indigent.  The putative class members

maintain permanent residences in various locations in Mexico, and joinder is impractical.  In addition, the putative class members lack sophistication in maintaining individual suits, reside outside of the United States, do not speak English fluently, and are unfamiliar with the American legal system.  After reviewing the allegations in the Amended Complaint, the Court agrees that the joinder of potentially over 400 individual H-2A temporary foreign workers who reside in various locations in Mexico, whose damages are relatively small,  who do not speak English fluently, and who lack familiarization with the American legal system would be burdensome.  Therefore, the Court concludes that the Plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1).

### 2. Commonality

The "commonality requirement measures the extent to which all members of a putative class have similar claims.  'Traditionally, commonality refers to the group characteristics of the class as a whole [while] typicality refers to the individual characteristics of the named plaintiff in relation to the class.' [*Prado-Steiman*, 221 F.3d at 1279]. Under commonality, 'a class action must involve issues that are susceptible to class wide proof.'" *Cooper v. Southern Company*, 390 F.3d 695, 714 (11th Cir. 2004) (overturned on other grounds) (citing *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir. 2001)). The H-2A Plaintiffs contend that pursuant to Rule 23(a)(2), there are questions of law and fact that are common to the class members. Specifically, the H-2A Plaintiffs identify the following as the common questions of law and  fact:

> 1)  whether Defendant Bentley Brothers, Inc. was an employer or joint employer of the Plaintiffs and the class members within the meaning the minimum wage provisions of the Florida Constitution and 20 C.F.R. §655.100(b) (2008), currently 20 C.F.R. §655.103(b);
>
> 2) whether the Defendants were obligated to provide the class members picking sacks without charge;

3)  whether the Defendants were obligated to compensate the Plaintiff and the class members for time viewing instructional videotape presentations directly related to the workers' citrus-harvesting jobs;

4)  whether the Defendants failed to pay the class members the contractual adverse effect wage rate for all compensable hours worked;

5)  whether the Defendants failed to maintain complete and accurate records regarding the work of members of the class with respect to the compensable hours worked;

6)  whether the Defendants failed to provide the members of the class with complete and accurate wage statements; and,

7)  whether the Defendants violated their contracts with the class members as embodied in the clearance order by failing to pay the class members wages as mandated by the Florida Minimum Wage Act.

(Com. ¶46).

The Plaintiffs argue that the Defendants had a policy or practice that treated all of the putative class members the same way.  Therefore, the same common questions of fact and law apply to all of the putative class members.  The Plaintiffs claim that all of the same employment practices were implemented and applied to all of the putative class members.

The Defendants assert that the temporary agricultural employees who worked for the Defendants during the 2007-2008 and 2008-2009 harvest seasons were assigned to work in one of the 12 to 14 harvesting crews and given housing in seven separate cities.  The workers stayed with a particular crew leader for the entire season, and did not travel to other agricultural properties. The Defendants contend that each crew leader generated payroll records for the H-2A workers. Further, the Defendants assert that the productivity of each worker depended on a number of factors, however, the H-2A workers' earnings were also dependent of the load limitations that Overlook faced at the processing plants. The Defendant asserts that Overlook spent $68, 000

supplementing the earnings of the H-2A workers so that they would earn minimum wage.  The Defendants also assert that the putative class members worked for different crew leaders than the named Plaintiffs.  The Defendants assert that whether the named Plaintiffs and putative class members earned minimum wages during their employment will depend on an examination of each person's weekly records for earnings and number of hours worked, and the named Plaintiffs cannot represent individuals who worked for other crew leaders.

The Court finds that the H-2A Plaintiffs assert common questions of fact and law as apply to the putative class members. The named Plaintiffs claim that the H-2A workers for the 2007-2008 and 2008-2009 citrus harvest seasons were not provided picking sacks without charge, were not compensated for watching instructional videotapes, were not compensated properly, were not provided accurate wage statements, and were not paid minimum wage as required by the Florida Constitution.  Further, the Plaintiffs assert that the issue of whether the Defendant, Bentley Brothers, Inc. was an employer or joint employer of the H-2A workers, and whether the Defendants kept accurate business records is also common to all of the H-2A workers.  Whether the H-2A workers worked in different locations, for different crew leaders, and for different hours does not change the common issues of fact regarding the H-2A workers' compensation.  The Court finds that the evidence presented is sufficient to make a determination as to class certification.  At the class certification stage, the Court is not to determine the merits of the claims but only consider the merits as to whether the Rule 23 requirements are met.  *Babineau v. Federal Exp. Corp,* 576 F.3d 1183, 1190 (11th Cir. 2009) (citing *Valley Drug,* 350 F.3d at 1188, n. 15) (other citations omitted).   The Court concludes that the named Plaintiffs have satisfied the commonality requirement under Rule 23(a).

### 3.  Typicality

To satisfy the typicality requirement of a class representative, the class representative must have the same interest and suffer the same injury as the class members.  *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008) (citing *Cooper v. Southern Co.,* 390 F.3d 695, 713 (11th Cir. 2004)).  FED. R. CIV. P. 23(a)(3) provides that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  The main focus of the typicality requirements is that the plaintiffs will advance the interests of the class members by advancing their own interests.  *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 698 (S.D. Fla. 2004).  "'Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.'" *Cooper v. Southern Company*, 390 F.3d 695, 713 (11th Cir. 2004)  (citing *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)).  "The typicality requirement is satisfied if 'the claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same theory.'" *Agan*, 222 F.R.D. at 698, (citing *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).  The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary.  *Agan*, 222 F.R.D. at 698.   The main concern is whether the named class representatives' claims have the same essential characteristics as the class members at large.  *Id.*[4]

---

[4]  The typicality and commonality requirements "tend to merge."  *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).  "Traditionally, commonality refers to the group characteristics of the class as a whole and typicality refers to the individual characteristics of the named plaintiff in relation to the class."  *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278-9 (11th Cir. 2000).  Neither typicality nor commonality require that all class members' claims be identical,

The Defendants presented their arguments as to commonality and typicality together. The named Plaintiffs contend that the Defendants have failed to comply with their contractual promises by failing to pay H-2A workers appropriate wages, failing to pay H-2A workers for compensable hours, failing to keep accurate payroll records, failing to pay for picking sacks, and failing to pay minimum wages. The Plaintiffs claims that these issues are identical for the named Plaintiffs as well as the putative class members, and if the named Plaintiffs succeed on these claims, so will the putative class member. The Plaintiffs argue that the same factual basis and the same law applies to all of the named Plaintiffs and putative class members. The Plaintiffs also argue that whether the putative class members worked on the same or different crews is immaterial as the policies and practices applied to all H-2A workers.

The named Plaintiffs all allege the same claims regarding the breach of employment contract, and violations of the minimum wage laws. The named Plaintiffs' and the putative class members' claims arise out of the same conduct and essentially the same factual and legal bases. The Court determines that the H-2A Plaintiffs have satisfied the typicality requirement under FED. R. CIV. P. 23(a)(3).

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). There are two separate inquiries under this section: (1) whether there are any substantial conflicts of interest between the named representatives of the class and the class members; and (2) whether the representatives will adequately prosecute the

___

and both may be satisfied even if some factual differences exist between the class member and the class representatives. *Id.* at 1279 n.14.

action. *Busby v. JRHBW Realty, Inc.*, 513 F.3d at 1323 (citing *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).  This requirement serves to uncover any conflict of interest that named parties may have with the class they represent.  *Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 627 (1997). "If substantial conflicts of interest are determined to exist among a class, class certification is inappropriate." *Id*.  Minor conflicts alone will not defeat class certification, the conflict must be "'fundamental'" to the specific issues in the case.  *Id*.  Under this section, the Court must also consider the competency and any conflicts that the class counsel may have.  *Amchem Products, Inc.* 521 U.S. at 627, n. 20.

The Defendants argue that the named Plaintiffs do not adequately represent the class.  First, the Defendants assert that three of the named Plaintiffs, Fernando Cruz-Maqueda, Israel Lopez Zamora, and Miguel Zavaleta-Tejeda have not provided responses to the Court's standard interrogatories regarding the FLSA.  Therefore, these three individuals are not adequate representatives of the class.  However, the FLSA claim is not one of the claims that the Plaintiffs are seeking to certify, and therefore, the Court does not find that the actions of these three Plaintiffs regarding their individual FLSA claims is relevant to the issue of being a class representative for the breach of contract and minimum wage claims.

The Defendants argue that prior to asserting a claim under the Florida Minimum Wage Act, the employees must notify their employer in writing of their claims and afford the employer an opportunity to address these concerns.  The Defendant argues that the Plaintiffs have not provided the statutorily required notice, and some of the named Plaintiffs responded in their interrogatories that they have not complained about their earnings to their employer. Whether the named Plaintiffs

and putative class members provided adequate notice is a factual issue and does not indicate that the named Plaintiffs will not adequately prosecute this case.

The Defendants also argue that the named Plaintiffs do not adequately represent the interests of the other H-2A workers because the named Plaintiffs did not work in all of the same crews as the members of the putative class.  The Plaintiffs argue that the named Plaintiffs and the putative class members will benefit from the same relief sought by receiving additional wages and reimbursement for expenses.  The same policies and practices were employed for the H-2A workers regardless of the crew.  The Court finds that the named Plaintiffs will fairly and adequately protect the interests of the class.

The Court also reviewed the experience of class counsel.  These attorneys have litigated other migrant farm worker litigation which included class actions.  The Court finds that Plaintiffs' counsel can adequately represent the class in this case. Therefore, the Court determines that the Plaintiffs have satisfied the adequacy of representation requirement under FED. R. CIV. P. 23(a)(4).

### 5.  Statements of No Interest

The Defendants assert that 259 members of the putative class signed Statements of No Interest indicating that they have no interest in participating in this litigation regarding minimum wage disputes or contract violations.  Further, some putative class member that have been deposed testified that they were properly paid.

The Plaintiffs assert that shortly after the Defendants were served, Bo Bentley, Overlook's president assembled 300 putative class members and informed these individuals that a lawsuit was pending.  He asked the workers to help fight the lawsuit and asked them sign a statement in

-16-

Spanish that they had no interest in being class members.  The signing of the statement was voluntary and Bentley told the workers that there would be no repercussions for not signing the statements.  The Plaintiffs assert that these statements have no bearing on the issue of class certification.

As the Defendants state in footnote 9, the "legal significance" of these statements is beyond the scope of the matters before the Court on this Motion for Declaration of Class Action.  (See, Doc. 25, n.9).  The Court does not find that these statements have any bearing on the issue of class certification.  There are factual issues surrounding the understanding of these individuals as to the claims raised in this litigation and as to understanding the import of the statement that cannot be resolved at this point in the litigation.

### C.  Rule 23(b) Requirements

The H-2A Plaintiffs assert that they have satisfied the requirements of FED. R. CIV. P. 23(b)(3).  For class certification to be appropriate under Rule 23(b)(3), common questions must predominate over questions that affect only individual members and the class action must be a superior method for "'fair and efficient adjudication of the controversy.'" *Cooper*, 390 F.3d at 722, (citing  FED. R. CIV. P. 23(b)(3)),  *See also*, *Busby v. JRHBW Realty, Inc.*, 513 F.3d at 1324.  Rule 23(b)(3) imposes two additional requirements to Rule 23(a) which are the requirements of increased efficiency and predominance.  *Id.*, (citing *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997)).

### 1. Predominance

The issues raised in the class action that are subject to generalized proof and which are applicable to the class as a whole "'must predominate over those issues that are subject only to individualized proof.'" *Babineau v. Federal Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009), (quoting *Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989)). "Common issues will not predominate over individual questions if, 'as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'" *Id*. at 1191 (quoting *Andrews v. Am. Tel. & Tel. Co.,* 95 F.3d 1014, 1023 (11th Cir. 1996)). A class should not be certified if it appears that most of the plaintiffs' claims have highly case-specific factual issues. *Id*. The predominance requirement is "far more demanding" than the commonality requirement. *Jackson*, 130 F.3d at 1005.

The Plaintiffs argue that the class claims predominate over the questions affecting the individual members of the putative class. The Plaintiffs claim that all class members were employed under a common employment contract, and that the named Plaintiffs seek to remedy the common breaches of the employment contract. The Plaintiffs articulate the common issues as to whether the H-2A workers were paid in full for the hours they worked, were reimbursed for pre-employment expenses, were paid for viewing training vides, and were supplied tools that were needed.

The Defendants argue that whether each individual H-2A worker was paid the appropriate wages will require individualized determinations based upon crew-specific records. The Defendants contend that the named Plaintiffs cannot testify as to the employment conditions for all of the other putative class members because they did not work under the same crew leaders and

went to different work areas.  The Defendant cites to *Luna v. Del Monte Fresh Produce (Southeast), Inc.*, 354 Fed. App'x. 422, 424 (11th Cir. Dec. 3, 2009) for the proposition that if a case requires individualized proof of compensation for each worker, then common questions of law or fact do not predominate over questions affecting individual members.  Upon review of *Luna*, the Eleventh Circuit held that the District Court did not abuse its discretion in not certifying a class, however, the Court also included the following language, "[w]e may have weighed the issues differently.  But, '[e]ven if we would have certified a class, that does not mean the district court abused its discretion in declining to do so.'" *Id.* at 425 (citing *Cooper v. Southern Co.,*, 390 F.3d 695, 711 (11th Cir. 2004)).

The Defendants also cite to *Babineau v. Federal Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) where the Eleventh Circuit upheld a District Court's ruling not to certify a class based upon the predominance element not being satisfied because an adjudication  of the plaintiffs' claims for an entire class would be "'swamped by individual factual inquires into activities of each employee during the gap period or during breaks.'" In the instant case, the Defendants assert that the named Plaintiffs argue that they were not properly paid as they did not take lunch breaks while harvesting and were underpaid for hours worked.  Further, the Plaintiffs claim that they worked ten (10) hours every day that they went to the groves, but were not compensated for their time.  The Defendants argue that a trier of fact must make an individualized inquiry to determine if the Plaintiffs were paid for the hours worked, and to determine the hours they worked.

The claims raised in the Complaint are:  whether Defendant Bentley Brothers, Inc. was an employer or joint employer of the Plaintiffs; whether the Defendants were obligated to provide the class members picking sacks without charge; whether the Defendants were obligated to

compensate the Plaintiff and the class members for time viewing instructional videotape presentations directly related to the workers' citrus-harvesting jobs; whether the Defendants failed to pay the class members the contractual adverse effect wage rate for all compensable hours worked;  whether the Defendants failed to maintain complete and accurate records regarding the work of members of the class with respect to the compensable hours worked;  whether the Defendants failed to provide the members of the class with complete and accurate wage statements; and, whether the Defendants violated their contracts with the class members as embodied in the clearance order by failing to pay the class members appropriate wages.  The named Plaintiffs allege that all of these issues are common to all of the H-2A Plaintiffs and all of the putative class members.  The determination of these issues will resolve each potential class member's underlying cause of action for both the breach of contract claim and the minimum wage claim.  The common issues predominate over any individualized proof for damages.  The Court finds that the Plaintiffs have shown that common questions of fact and law predominate over the issues affecting individual members of the class.

### 2.  Superiority of Class Action

Rule 23(b)(3) requires that a court find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  The Court looks to the four non-exclusive matters listed in Rule 23(b)(3) which are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the likely difficulties in the managing  a class action.

The Plaintiffs assert that it is unlikely that an individual class member will have any interest in instituting or controlling their individual actions.  The Plaintiffs reside in Mexico, are not proficient in English, are indigent, and will recover small amounts.  One other action is pending by members of the putative class against the Defendants with thirteen (13) plaintiffs in that case.  The Plaintiffs assert that the statute of limitations has run on many of the class members' claims, and the Plaintiffs counsel states that it is unlikely that any other actions will be initiated involving the same claims. (Doc. 24, n.11).   The Plaintiffs argue that this forum is desirable as the Defendants conduct business in this district and their records are located in this district.  The Plaintiffs admit that every class action represents administrative difficulties, however, the benefits of maintaining a class action in this case outweigh the administrative burdens.  The Plaintiffs contend that the Court will address the identical claims for each contractual breach for each worker and that a common set of facts and law will apply.  The Plaintiffs also argue that the computation for unpaid wages is manageable. The Defendants assert that a class action is not a superior method of adjudicating the claims brought as it will require highly individualized assessments of the contract and statutory claims.

The Court determines that the putative class members' claims are predicated on a common set of facts and concern the same employment contract and same violations of the minimum wage laws.  The breaches of contract and the violations of the minimum wage laws apply to every putative class member and each individual plaintiff will not be needed to testify.  The process of bringing individual actions would be much more onerous that a single class action.  Therefore, the

Court concludes that the Plaintiffs have established that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### IV.  Conclusion

The Court finds that the named Plaintiffs have met their burden under FED. R. CIV. P. 23(a) and 23(b)(3), and the Court respectfully recommends that the Motion for Declaration of a Class Action (Doc. 24) be granted as to Counts II and III of the Complaint.  The Court respectfully recommends that the class be defined as follows:

> All H-2A temporary foreign workers who were employed pursuant to a temporary labor certifications issued to Overlook Harvesting Company, LLC for work during the 2007-2008 and/or 2008-2009 Florida citrus harvests.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this ___9th___ day of August, 2011.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


Copies: All Parties of Record

-22-